IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| ALAN M. OBERC, | § | |
| Plaintiff, | § | |
| vs. | § | **Civil Action No. 3:13-CV-1010-N-BH** |
| | § | |
| FAIRLANE CAPITAL INC. d/b/a | § | |
| BREEZE LAUNDRY, | § | |
| Defendant. | § | **Referred to U.S. Magistrate Judge** |

## FINDINGS, CONCLUSIONS, AND RECOMMENDATION

Pursuant to *Special Order No. 3-251*, this case was referred for pretrial management, including the determination of non-dispositive motions and issuance of findings of fact and recommendations on dispositive motions. Before the Court is *Defendant's Rule 12(b)(6) Motion to Dismiss and Brief in Support*, filed September 16, 2014 (doc. 109). Based on the applicable law and relevant findings, the motion to dismiss should be **GRANTED in part and DENIED in part**.

## I. BACKGROUND

On February 22, 2013, Plaintiff Alan M. Oberc (Plaintiff) filed suit against Fairlane Capital, Inc. d/b/a Breeze Laundry (Defendant) for alleged injuries arising out of a suspected theft at a laundrymat it owned and operated. (doc. 1.)[1] On April 7, 2014, Plaintiff filed his first amended complaint alleging claims for defamation per se; false imprisonment; negligent hiring, training, supervision, and retention; and intentional infliction of emotional distress. (doc. 71 at 33-55.)

Plaintiff contends that he is an active attorney, licensed in Michigan, who secured employment in Dallas on a couple of occasions. (*Id.* at 5, 9.) He claims that in March 2012, he was in Dallas working on litigation matters for two companies. (*Id.* at 10.) From March 2012 until July

---

[1]Citations to the record refer to the CM/ECF system page number at the top of each page rather than the page numbers at the bottom of each filing.

2012, he frequently utilized Defendant's laundrymat to wash and dry his clothes.  (*Id*. at 11.)

Plaintiff contends that on May 14, 2012, he brought in his clothes, a bottle of bleach, and a bottle of Tide detergent, and began washing his clothes, per his usual routine.  (*Id*.)  When his clothes were nearly finished drying, he walked over to a display case that held a bottle of Tide detergent in it.  (*Id*.)  Without touching the bottle or gesturing in a manner to suggest he was about to touch it, he glanced at the bottle's price and mentally calculated the price per load for the detergent to determine if it was more expensive than his usual purchase of Tide detergent.  (*Id*.)  Around this time, Christina Ibanez, Defendant's sole employee for that night, came out of the back area of the laundry mat and took some of her personal laundry out to her car.  (*Id*.)

As he was folding his clothes, Plaintiff noticed that Ms. Ibanez  was sweeping the floor "from the front of the building toward the back row of washing machines" where he was folding his clothes.  (*Id*. at 14.)  He then heard her frantically calling out in Spanish to Ms. Anali Reza, another customer who was approximately fifteen feet away from him, and then walked over to Ms. Reza. (*Id*. at 15.)  Plaintiff believes she asked Ms. Reza to translate for her and told Ms. Reza that he took the detergent from the shelf when she went outside.  (*Id*.)  After Ms. Ibanez spoke to Ms. Reza, who was surprised that Ms. Ibanez was accusing him of taking the detergent, Ms. Ibanez then approached with Ms. Reza.  (*Id*. at 16.)  Ms. Reza told him that Ms. Ibanez was accusing him of taking the bottle of Tide detergent without paying for it.  (*Id*.)  Plaintiff denied taking the detergent, but Ms. Ibanez continued  her "detention and investigation" and accused him of stealing the detergent while taking a strong physical stance.  (*Id.* at 17.)  He contends that Ms. Ibanez told him in broken English that she was not defaming him, that she would call the police, and that he had to stay and pay for the detergent.  (*Id*.)  He claims he attempted to reason with her to no avail, and she told him that she saw

him take the detergent with her own eyes.  (*Id*. at 18.)  Plaintiff contends that during this detention by Ms. Ibanez, he "generally" knew that she was exercising the "shopkeeper's privilege," and that he had to remain under detention while being investigated for shoplifting or he could be criminally prosecuted regardless of whether the allegations were true.  (*Id*. at 21.)

Plaintiff claims that he stated several times that he would like to leave and that he did not feel like he could leave since Ms. Ibanez had threatened to call the police and was "adamantly and aggressively" waiving the phone at him.  (*Id*. at 22.)  He also asserts that he "reasonably believed that it was possible" that Defendant kept a handgun in the back office, which was only three or four steps from where Ms. Ibanez was standing.  (*Id*.) In response to questioning from him, Ms. Ibanez told him that she would call the police, and he was not free to leave.  (*Id.* at 23.)

Plaintiff contends that after forty-five minutes passed from the time he was detained, Ms. Ibanez "stepped to the side" to make a phone call.  (*Id*. at 24.)  At that time, it was past the laundrymat's closing time.  (*Id*.)  He did not know whether Ms. Ibanez was calling the police, her boss, or both, but to the best of his knowledge, she never called the police.  (*Id*.)  While Ms. Ibanez was on the phone, Plaintiff experienced "a sensation of high blood pressure in the head and sinuses, a fluttering of heart muscles, a tightening in the chest area, and the sensation of a large bubble of blood entering or exiting the heart, where his heart-beat significantly slowed for a minute, until it recovered." (*Id*. at 25.)  He further contends that he was in fear of being arrested or questioned by the police, and he had never been so humiliated and embarrassed in his entire life.  (*Id*.)

Plaintiff claims that Ms. Ibanez eventually handed her phone to him so that he could speak to Rocio Renteria, a day shift employee of the laundrymat.  (*Id*. at 26.)  Ms. Renteria asked him what was going on, and he explained that he had been falsely accused and desired to leave the premises

without fear of arrest. (*Id*.) Ms. Renteria informed him that she would attempt to contact her boss, Mr. Chon, to make a decision regarding how she should handle the situation. (*Id*.) Ms. Ibanez then made one more phone call before handing the phone back to him, at which time Ms. Renteria told him that he could leave and "they would forget about it." (*Id*.) Ms. Ibanez then told him that her boss was not answering the message from Ms. Renteria, and that he could leave because she had to close store. (*Id*. at 26-27.)

Plaintiff contends that he knew he could not trust Ms. Ibanez, and he realized he needed to establish as a matter of fact that he was not a criminal even though Ms. Ibanez granted him his freedom. (*Id*. at 27.) He asked Ms. Ibanez and Ms. Reza to walk over to his storage bin holding his property so that he could prove his innocence. (*Id*. at 28.) Apparently, when he first started pulling his bottle of Tide detergent out of his bin, she exclaimed, "He take it, he take it." (*Id*.) However, he contends that once he pulled the entire bottle out, she said, "uh-oh, it's not the soap." (*Id*. at 30.) Plaintiff asserts that Ms. Ibanez noticed that there was not a bold black marker price of $8.99 written on his bottle of Tide detergent as was written on the bottles owned and displayed by Defendant at the laundrymat. (*Id*.) She exclaimed, "no price markings." (*Id*.) He claims that he showed her and Ms. Reza that there was only a small amount of detergent remaining in his bottle, and both ladies agreed that it was not a stolen bottle of detergent. (*Id*. at 31.) He contends that at that moment, Ms. Ibanez told him she was sorry, but he did not find that apology sincere, since she followed the apology by saying she had to leave and get her children. (*Id*.)

Plaintiff contends that throughout the entire detention, which he claims lasted one and a half hours, he was "defamed, publicly humiliated, embarrassed, shamed, mentally anguished, he suffered repeated attacks to his dignity, unwillingly endured a restraint against his Constitutional rights of

4

liberty, even suffering the pain of a minor heart attack or infarct, and other injuries and harm." (*Id.* at 16, 26, 32.)   He further claims that he continues to suffer from "paranoia of being publicly accused of committing a crime and being falsely detained, and from recurring bad thoughts, and more." (*Id.* at 32.)

On September 16, 2014, Defendant moved to dismiss this action. (doc. 109.)  Plaintiff filed a response on October 8, 2014.[2]   (doc. 112.)

## II.  MOTION TO DISMISS

Defendant moves to dismiss Plaintiff's claims for attorney's fees and for intentional infliction of emotional distress under Fed. R. Civ. P. 12(b)(6).  (doc. 109 at 5-6.)

### A.   <u>Procedural Basis for Motion</u>

Rule 12(b)(6) provides a basis for dismissal when the plaintiff has failed to state claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  A motion under Rule 12(b)(6) must be made before the defendant files a responsive pleading, however.  Fed. R. Civ. P. 12(b).  Defendant filed an answer to Plaintiff's first amended complaint on May 14, 2014.  (See doc. 77.)   Because Defendant filed its answer to Plaintiff's complaint five months before its motion to dismiss, Rule 12(b)(6) is inapplicable.

Like Rule 12(b)(6), Rule 12(c) provides a means "to dispose of cases where the material facts are not in dispute and a judgment on the merits can be rendered by looking to the substance of the pleadings and any judicially noticed facts."  *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 312 (5th Cir.2002) (citation omitted).  Unlike a motion under Rule

---

[2]In addition to his response to the motion to dismiss, Plaintiff filed an objection to the motion.  (doc. 111.) The arguments in the objection are duplicative of the arguments in the response, and the objection does not satisfy the requirements for a response to a motion under the Local Civil Rules of the Northern District of Texas.  (*See* L.R. 7.1.) It has therefore not been considered.

12(b)(6), however, a party may file a motion under Rule 12(c) "[a]fter the pleadings are closed—but early enough not to delay trial." Fed. R. Civ. P. 12(c). Defendant's motion is therefore construed as a 12(c) motion for judgment on the pleadings. *See Jones v. Greninger*, 188 F.3d 322, 324 (5th Cir. 1999) (finding the court may construe an untimely 12(b)(6) motion as a 12(c) motion for judgment on the pleadings based on failure to state a claim).

**B.      Applicable Standard**

The standard for deciding a Rule 12(c) motion is the same as for a Rule (b)(6) motion to dismiss. *Guidry v. Am. Pub. Life Ins. Co.*, 512 F.3d 177, 180 (5th Cir. 2007). Motions to dismiss under Rule 12(b)(6) are disfavored and rarely granted. *Sosa v. Coleman*, 646 F.2d 991, 993 (5th Cir. 1981). Under the 12(b)(6) standard, a court cannot look beyond the face of the pleadings. *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996); *see also Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999), *cert. denied*, 530 U.S. 1229 (2000). It is well-established that "*pro se* complaints are held to less stringent standards than formal pleadings drafted by lawyers." *Miller v. Stanmore*, 636 F.2d 986, 988 (5th Cir. 1981). Nonetheless, regardless of whether the plaintiff is proceeding *pro se* or is represented by counsel, pleadings must show specific, well-pleaded facts, not mere conclusory allegations to avoid dismissal. *Guidry v. Bank of LaPlace*, 954 F.2d 278, 281 (5th Cir. 1992). The court must accept those well-pleaded facts as true and view them in the light most favorable to the plaintiff. *Baker*, 75 F.3d at 196. "[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of [the alleged] facts is improbable, and that a recovery is very remote and unlikely." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007) (quotation marks omitted).

Nevertheless, a plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555; *accord Ashcroft v. Iqbal*, 556

U.S. 662, 678 (2009) (emphasizing that "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions").  The alleged facts must "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.  A complaint fails to state a claim upon which relief may be granted when it fails to plead "enough facts to state a claim to relief that is plausible on its face." *Id*. at 570.

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully.  Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Iqbal*, 556 U.S. at 678 (citations omitted).  When plaintiffs "have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." *Twombly*, 550 U.S. at 570; *accord Iqbal*, 556 U.S. at 678.

## C.    Attorney's Fees

Defendant argues that Plaintiff has not adequately pled a case for recovery of attorney's fees because attorney's fees are only allowable by statute or contract, and Plaintiff's claims are personal injury claims.  (doc. 109 at 6-8.)

"It is a long-recognized principle that federal courts sitting in diversity cases[, such as this one], 'apply state substantive law and federal procedural law.'" *Shady Grove Orthopedic Assoc., P.A. v. Allstate Ins. Co.,* 559 U.S. 393, 417 (2010), quoting *Hanna v. Plumer,* 380 U.S. 460, 465 (1965).  An award of attorneys' fees is governed by state substantive law.  *Chevron USA, Inc. v. Aker Maritime Inc.*, 689 F.3d 497, 505 (5th Cir. 2012), quoting *Mathis v. Exxon Corp.,* 302 F.3d 448, 461 (5th Cir.2002).  Federal procedure requires that claims for attorneys' fees generally be

made by motion filed within 14 days of the entry of judgment pursuant to Fed. R. Civ. P. 54(d)(2). *United Industries, Inc. v. Simon-Hartley, Ltd.*, 91 F.3d 762, 766 (5th Cir. 1996); *see also Evanston Ins. Co. v. Graves*, 3:13-CV-959-D, 2013 WL 4505181, *1 (N.D. Tex. Aug. 23, 2013) ("Rule 54(d) does not create a substantive right to attorney's fees. It is a procedural rule that provides that a claim for attorney's fees and related nontaxable expenses is to be made by motion..."); *CSMG Technologies, Inc. v. Allison*, No. 4:07-CV-0715, 2009 WL 2242351, *3 n. 20 (S.D. Tex. July 24, 2009) (party seeking attorney's fees under Texas law in a diversity case must still follow federal procedural rules).

### 1.    *Texas Law*

Under Texas law, a party may recover attorney's fees only when allowed by statute or contract. *See ½ Price Checks Cashed v. United Auto Ins. Co.*, 344 S.W.3d 378, 382 (Tex. 2011)(citing *Akin, Gump, Strauss, Hauer & Feld, L.L.P. v. Nat'l Dev. & Research Corp.,* 299 S.W.3d 106, 120 (Tex.2009)); *Tony Gullo Motors I, L.P. v. Chapa,* 212 S.W.3d 299, 310–11 (Tex.2006)). a party may recover attorneys' fees only when allowed by statute or contract.

Here, Plaintiff brings causes of action for defamation per se; false imprisonment; negligent hiring, training, supervision, and retention; and intentional infliction of emotional distress. (doc. 71 at 33-55.) For each claim, he requests "additional damages," including "allowable attorney fees permitted under statute or by equity." (*Id*. at 39, 44, 50, 55.) He also requests exemplary damages under Sections 41.001; 41.003(a)(2),(3); 41.006; and 41.011 of the Texas Civil Practice and Remedies Code for each cause of action.[3] (*Id*. at 38, 43, 49, 54.) Plaintiff does not bring any claims under a statute that allows attorney's fees, and none of his claims sound in contract. Accordingly,

---

[3]These sections allows the recover of exemplary damages in certain instances. (*See* Tex. Civ. Prac. & Rem. Code §§ 41.001; 41.003(a)(2),(3); 41.006; 41.011.

he cannot recover attorney's fees for his claims.  *See Stine v. Marathon Oil Co.*, 976 F.2d 254, 264 (5th Cir. 1992)("Texas law does not permit an award of attorney's fees for tort claims.")

However, "[e]xemplary ... damages may be allowed by law in addition to actual damages by way of punishment  ... and may also include compensation for inconvenience, reasonable attorney's fees, and other losses too remote to be considered under actual damages."  *McDonald v. Bennett*, 674 F.2d 1080, 1093 n.10 (5th Cir. 1982) (internal quotations omitted). *See also Hofer v. Lavender*, 679 S.W.2d 470, 474 (Tex. 1984) ("[E]xemplary damages [exist] as an example for the good of the public and to compensate for inconvenience and attorney's fees.") (citing *Allison v. Simmons*, 306 S.W.2d 206, 211 (Tex. Civ. App.–Waco 1957, writ ref'd n.r.e.)).   A factfinder may therefore consider attorney's fees in assessing the amount of exemplary damages.   If Plaintiff recovers exemplary damages, a factfinder can consider attorney's fees in assessing the amount of damages.

### 2.    *Pro Se Attorney*

Defendant also appears to argue that Plaintiff's *pro se* attorney status precludes him from recovering reasonable attorney's fees under Chapter 38 of the Texas Civil Practice and Remedies Code.  (*See* doc. 109 at 7-8.)  It argues that Chapter 38, which allows for the recovery of reasonable attorney's fees only for certain specified types of claims, requires that a Plaintiff be represented by an attorney, and Plaintiff, who is an attorney, has filed this action *pro se.*  (*Id.*)

The amended complaint does not seek attorney's fees pursuant to Chapter 38  of the Texas Civil Practice and Remedies Code.  In addition, Plaintiff cites case law that provides and suggests that a *pro se* attorney representing himself can be awarded attorney's fees pursuant to Chapter 38. (*See* doc. 112 at 29-30 (citing *Beckstrom v. Gilmore*, 886 S.W.2d 845, 847 (Tex. App.–Eastland, writ denied) and *Campbell, Athey & Zukowski v. Thomasson*, 863 F.2d 398, 400 (5th Cir. 1989)).

Accordingly, Defendant's motion to dismiss Plaintiff's request for attorneys' fees should be granted in part and denied in part. Plaintiff's request for attorney's fees should only be allowed in consideration of his request for exemplary damages.[4]

## D.   <u>Intentional Infliction of Emotional Distress</u>

Defendant argues that Plaintiff has not properly alleged the "extreme and outrageous conduct" element of a claim for intentional infliction of emotional distress.[5] (doc. 109 at 9.)

Intentional infliction of emotional distress is "a 'gap-filler' tort, judicially created for the limited purpose of allowing recovery in those rare instances in which a defendant intentionally inflicts severe emotional distress in a manner so unusual that the victim has no other recognized theory of redress." *Hoffmann-La Roche Inc. v. Zeltwanger*, 144 S.W.3d 438, 447 (Tex. 2004). To establish this claim under Texas law, a plaintiff must show (1) intentional or reckless conduct by the defendant (2) that was extreme and outrageous and (3) caused the plaintiff severe emotional distress. *Id.* at 445. Conduct qualifies as extreme and outrageous only when it is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Id.* (citation and internal quotation marks omitted). It must be so severe that no reasonable person could be expected to endure it. *Payne v. Baker*, Nos. 4:14-cv-473, No. 4:14-cv-596, 2014 WL 5581314, at *4 (N.D. Tex. Nov. 3, 2014)(citing *GTE Sw. Inc. v. Bruce*, 998 S.W.2d 605, 612 (Tex. 1999)).

---

[4] Plaintiff argues that he is entitled to attorney's fees under the Texas and Federal Declaratory Judgment Acts. (doc. 112 at 32-33.) He has not requested relief under either of those Acts, however. He only requests injunctive relief requiring Defendant to publicly retract its statement. (doc. 71 at 55.)

[5] Defendant also contends that Plaintiff's allegations regarding his claim for intentional infliction of emotional distress are conclusory. (doc. 109 at 8-9.) Because the claim is otherwise subject to dismissal, it is unnecessary to reach this argument.

As a general matter, insensitive and rude behavior does not constitute extreme and outrageous conduct. *DTE Southwest, Inc. v. Bruce*, 998 S.W.2d 605, 612 (Tex. 1999). "Similarly, mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities do not rise to the level of extreme and outrageous conduct." *Id.* In fact, behavior is not outrageous simply because it is tortious. *See Natividad v. Alexsis, Inc.*, 875 S.W.2d 695, 699 (Tex. 1994). Additionally, the fact that an action is intentional or malicious does not make it sufficiently extreme or outrageous to sustain a claim for intentional infliction of emotional distress. *Payne*, 2014 WL 5581314, at *5.

The availability of this tort has been greatly limited by the Texas Supreme Court, which has held that the tort is available only in those situations in which severe emotional distress is the intended consequence or primary risk of the actor's conduct. *See Dillard Dept. Stores, Inc. v. Silva*, 106 S.W.3d 789, 797 (Tex. App.–Texarkana 2003), *aff'd*, 148 S.W.3d 370 (Tex. 2004)(per curiam). (citing *Standard Fruit & Vegetable Co. v. Johnson*, 985 S.W.2d 62, 67 (Tex. 1998)) Whether conduct qualifies as extreme and outrageous is a question of law. *Wornick Co. v. Casas*, 856 S.W.2d 732, 734 (Tex. 1993); *McMillan v. Memorial Hermann Health Systems*, No. H-14-1215, 2014 WL 7192263, at *13 (S.D. Tex. Dec. 16, 2014).

Here, Plaintiff alleges that he was suspected of stealing a bottle of Tide detergent, and he was held at the laundrymat while Ms. Ibanez determined what course of action she should take. (doc. 71 at 15- 26.) Once she called another employee and/or management, she informed Plaintiff that he was free to leave, and that the incident would be forgotten. (*Id*. at 26.) Once she determined he did not take the bottle of Tide, she apologized to him. (*Id.* at 31.) Plaintiff argues that Defendant's conduct was intentional and/or reckless by detaining him for an hour and a half, "publically vilifying

11

him," and "restricting his freedom of liberty to leave the premises" even though Defendant knew at all times that he was sensitive to such conduct because  it had witnessed first hand his "volatile emotions" caused by Defendant's false accusations and false imprisonment.  (doc. 71 at 51.)  He contends that Defendant's conduct was extreme and outrageous because a reasonable person would believe that it was outrageous to falsely detain him for an hour and a half when he was a regular patron of the laundrymat who never caused any trouble.  (*Id*. at 52.)  Plaintiff outlines an extensive list of damages that he contends Defendant's conduct caused him, including, "minor painful heart attack, shock, humiliation, embarrassment, and loss of liberty and freedom of movement.  (*Id*.)  He claims that such injuries disrupted his daily life precluding him from functioning as he normally did. (*Id*.)  He also alleges special damages and exemplary damages.  (*Id*. at 53-54.)

Taking Plaintiff's allegations as true for purposes of this motion, Ms. Ibanez's conduct may be considered inappropriate, embarrassing, harassing, and it may have caused Plaintiff shame, humiliation, and grief.  However, the alleged conduct does not rise to the level of being "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community."  *See Zeltwanger*, 144 S.W.3d at 447.

A Texas court of appeals did not find sufficiently outrageous conduct under facts similar to this case.  In *Carson v. J.C. Penney*, No. 05-99-00607-CV, 2001 WL 128641 (Tex. App.–Dallas Feb. 16, 2001, no pet.)(mem. op., not designated for publication).  Two minor girls tried on bras in a fitting room at a J.C. Penney store in a mall and then left the store.  2001 WL 128641 at *1.  While inside of another store in the mall, they were approached by security guards from J.C. Penney and escorted back to the store.  *Id*. There was evidence that during their one and one-half hour detention,

the security employees did not allow the girls to call their parents or the police, they lied to them to get a confession, and they displayed inappropriately-sized bras in front of the girls. *Id*. at *3. J.C. Penney conceded at trial that the girls did not shoplift any items. *Id*. at *1. The court found that although the conduct was probably offensive to the average person, the security guards were doing their job, and the offensive nature of their encounter with the girls did not rise to the level of outrageous conduct. *Id*. at *4. It affirmed the trial court's judgment dismissing the claim. *Id*.

Likewise, in other states where the elements of a claim for intentional infliction of emotional distress are the same as under Texas law, courts have declined to find that an accusation and detention of a suspected shoplifter reached an "extreme and outrageous" level sufficient to state a claim. *See Pope v. Rostraver Shop and Save*, No. 2:06-cv-1009, 2007 WL 776115, at *4 (W.D.Pa. Mar. 9, 2007) (citing cases and finding "[c]ourts almost uniformly do not find 'extreme and outrageous' conduct when suspected shoplifters are detained"). In *Pope*, the plaintiff contends that she made several purchases at a local store and when she attempted to leave, the store manager-defendant stopped her in view of the public and accused her of shoplifting. *Id.* at 1. Although the plaintiff showed the defendant her receipt, he refused to release her. *Id*. A police office arrived to the scene and instructed the plaintiff to lift up her shirt. *Id*. He then "repeatedly poked at her buttocks with unnecessary prolonged contact with her mid-section." *Id*. The plaintiff was detained for a considerable period of time, but no stolen merchandise was found on her person so she was eventually released without charges. *Id*. She alleges that she was diagnosed with anxiety disorder, including, "panic attacks, sleep disorder, loss of interest and motivation, and depressed mood." *Id*. The court found that the plaintiff had not sufficiently alleged conduct that rose to the level of

extreme and outrageous conduct and dismissed the claim under Rule 12(b)(6). *Id*. at 4-5.[6]

In *Serpico v. Menard, Inc*., 927 F.Supp.276 (N.D.Ill. 1996), the plaintiff contends that while shopping at a store, he inadvertently left a nut, which had a value of less than 70 cents, in his pocket. *Id*. at 278. He forgot to pay for the nut, and as he left the store with his other purchase, defendant's representative detained him, took his picture and placed it on a board in the store, and swore out a criminal complaint against the plaintiff with the police. *Id*. The representative allegedly refused to listen to the plaintiff's explanation that he simply forgot to pay for the nut. *Id*. The plaintiff was forced to retain a lawyer, and the criminal charge was ultimately dismissed because no one attended the trial on the defendant's behalf. *Id*. at 279. The court held that the plaintiff's allegations did not state a cause of action for intentional infliction of emotional distress because the stress alleged could not be regarded as "so severe that no reasonable man could be expected to endure it." *Id*. at 281-82. The court granted the defendant's Rule 12(c) motion for judgment as to the intentional infliction of emotional distress claim. *Id.* at 282.

Here, Defendant's alleged conduct appears to be even less harassing and embarrassing than the conduct alleged in *Carson, Pope* and *Serpico,* and the alleged conduct in those cases was not actionable as a claim for intentional infliction of emotional distress. The police were not called, Plaintiff was not arrested, criminal charges were not filed, and he was not interrogated by the police. While Ms. Ibanez's conduct may have been harassing and abusive to Plaintiff and caused him a great deal of embarrassment, it is simply does not warrant a claim for intentional infliction of emotional distress. "Occasional malicious and abusive incidents should not be condoned, but must often be tolerated in our society." *Phillips v. United Parcel Service*, No. 3:11-cv-1197, 2011 WL

---

[6]The court did note that the intervening actions of the police officer could not be attributed to the defendant, who merely called the police and made the plaintiff wait. *Id.* at 4.

2680725, at *14 (N.D. Tex. June 21, 2011) (quoting *GTE Sw., Inc.*, 998 S.W.2d at 617)).

Accordingly, Defendant's motion to dismiss Plaintiff's claim for intentional infliction of emotional distress should be granted.

## III.   RECOMMENDATION

Defendant's motion to dismiss should be **GRANTED in part and DENIED in part,** and Plaintiff's claim for intentional infliction of emotional distress should be dismissed with prejudice, and Plaintiff's request for attorney's fees should be considered only as part of Defendant's request for exemplary damages.

**SO RECOMMENDED** on this 28th day of May, 2015.

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law.  Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found.  An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific.  Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error.  *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE