IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| ALAN M. OBERC, | § | |
|        **Plaintiff,** | § | |
| **vs.** | § | Civil Action No. 3:13-CV-1010-N-BH |
| | § | |
| FAIRLANE CAPITAL INC. d/b/a | § | |
| BREEZE LAUNDRY, | § | |
|        **Defendant.** | § | Referred to U.S. Magistrate Judge |

### FINDINGS, CONCLUSIONS, AND RECOMMENDATION

Pursuant to *Special Order No. 3-251*, this case was referred for pretrial management, including the determination of non-dispositive motions and issuance of findings of fact and recommendations on dispositive motions.  Before the Court is Defendant Fairlane Capital, Inc.'s *Motion to Dismiss Second Amended Complaint*, filed March 3, 2016 (doc. 212).  Based on the relevant filings and applicable law, the motion to dismiss should be **GRANTED**.

## I.  BACKGROUND

On February 22, 2013, Plaintiff Alan M. Oberc (Plaintiff) filed suit against Fairlane Capital, Inc. d/b/a Breeze Laundry (Defendant) for alleged injuries arising out of its agent's allegations that he took a bottle of Tide laundry detergent from its laundromat without paying for it.  (doc. 1.)

### A.  Initial Claims

Plaintiff contends that he is an active attorney who has been licensed in Michigan since 2000. (doc. 209 at 5.)[1]  Since his licensure, he has been in good standing and has not had any professional grievances, character issues, or disciplinary actions. (*Id.*)  He has worked as a document reviewer in several complex litigation cases, and in March 2012, he returned to Dallas for document review work. (*Id.* at 5, 10.)

---

[1] Citations to the record refer to the CM/ECF system page number at the top of each page rather than the page numbers at the bottom of each filing.

Plaintiff contends that on May 14, 2012, he brought in his clothes, a bottle of bleach, and a bottle of Tide detergent to Defendant's laundromat. (*Id*. at 11.)  When his clothes were nearly finished drying, he walked over to a display case that held a bottle of Tide detergent.  (*Id*. at 12.)  Without touching the bottle, he glanced at the bottle's price and mentally calculated the price per load for the detergent to determine if it was more expensive than his usual purchase of Tide detergent.  (*Id*.)  Around this time, Christina Ibanez, Defendant's sole employee for that night, came out of the back area of the laundromat and took some of her personal laundry out to her car.  (*Id*.)

As he was folding his clothes, Plaintiff noticed that Ms. Ibanez was sweeping the floor "from the front of the building toward the back row of washing machines," where he was folding his clothes. (*Id*. at 13-14.)  He then heard her frantically calling out in Spanish to Anali Reza, another customer who was approximately fifteen feet away from him. (*Id.* at 15.)  After Ms. Ibanez spoke to Ms. Reza, they approached him.  (*Id*. at 16.)  Ms. Reza told him that Ms. Ibanez accused him of taking a bottle of Tide detergent without paying for it.  (*Id*.)

Plaintiff denied taking the detergent, but Ms. Ibanez continued  her "detention and investigation" and accused him of stealing the detergent while taking a strong physical stance.  (*Id.* at 17.)  He contends that Ms. Ibanez told him in broken English that she was not defaming him, that she would call the police, and that he had to stay and pay for the detergent.  (*Id*.)  He claims he attempted to reason with her to no avail, and she told him that she saw him take the detergent with her own eyes. (*Id*. at 18.)  Plaintiff contends that during this detention by Ms. Ibanez, he "generally" knew that she was exercising the "shopkeeper's privilege," and that he had to remain under detention while being investigated for shoplifting or he could be criminally prosecuted regardless of whether the allegations were true.  (*Id*. at 21.)

2

Plaintiff claims that he stated several times that he would like to leave but that he did not feel he could leave since Ms. Ibanez had threatened to call the police and was "adamantly and aggressively" waving a phone at him.  (*Id*. at 22.)  He also contends that he "reasonably believed that it was possible" that Defendant kept a handgun in the back office, which was only three or four steps from where Ms. Ibanez was standing.  (*Id*.)  Plaintiff stated, "I would like to know if I'm free to leave, because I'm in fear that you're going to call the police." (*Id*. at 23.)  She responded "Yes, police. No, I call police," which Plaintiff understood as "'yes', she was going to call the police, and 'no', he [was] not free to leave because she [was] about to call the police." (*Id*.)

Plaintiff contends that after forty-five minutes had passed, Ms. Ibanez "stepped to the side" to make a phone call.  (*Id*. at 24.)  At that time, it was past the laundromat's closing time, and he did not know whether Ms. Ibanez was calling the police, her boss, or both. (*Id*.)  While Ms. Ibanez was on the phone, Plaintiff experienced "a sensation of high blood pressure in the head and sinuses, a fluttering of heart muscles, a tightening in the chest area, and the sensation of a large bubble of blood entering or exiting the heart, where his heart-beat significantly slowed for a minute, until it recovered." (*Id*. at 25.)  He feared being arrested or questioned by the police, and contends that he had never been so humiliated and embarrassed in his entire life.  (*Id*.)

Ms. Ibanez eventually handed her phone to him so that he could speak to Rocio Renteria, a day shift employee of the laundromat.  (*Id*. at 26.)  Ms. Renteria asked him what was going on, and he explained that he had been falsely accused and desired to leave the premises without fear of arrest. (*Id*.)  Ms. Renteria informed him that she would attempt to contact her boss, Mr. Chon, to make a decision regarding how she should handle the situation.  (*Id*.)  Eventually, Ms. Renteria told him that he could leave and "they would forget about it." (*Id*.)  Ms. Ibanez then told him that her boss was not

answering the message from Ms. Renteria, and that he could leave because she had to close store.  (*Id*. at 26-27.)

Plaintiff contends that he knew he could not trust Ms. Ibanez, and he realized he needed to establish as a matter of fact that he was not a criminal. (*Id*. at 27.)  He asked Ms. Ibanez and Ms. Reza to walk over to his storage bin so that he could prove his innocence.  (*Id*. at 28.)  When he started to pull his bottle of Tide detergent out of his bin, Ms. Ibanez exclaimed, "He take it, he take it."  (*Id*.)  Once he pulled the entire bottle out, she said, "uh-oh, it's not the soap." (*Id*. at 30.)  Plaintiff contends that Ms. Ibanez noticed that there was not a bold black marker price of $8.99 written on his bottle, as was written on the bottles displayed at the laundromat.  (*Id*. at 29.)  She exclaimed, "no price markings."  (*Id*. at 30.)  He also showed her and Ms. Reza that there was only a small amount of detergent remaining in his bottle, and both ladies agreed that it was not a stolen bottle of detergent. (*Id*. at 31.)  Ms. Ibanez then told him she was sorry, and then she left. (*Id*.)

Plaintiff contends that throughout the detention of one and a half hours, he was "defamed, publicly humiliated, embarrassed, shamed, mentally anguished, he suffered repeated attacks to his dignity, unwillingly endured a restraint against his Constitutional rights of liberty, even suffering the pain of a minor heart attack or infarct, and other injuries and harm." (*Id*. at 16, 26, 32.)   He further claims that he continues to suffer from "paranoia of being publicly accused of committing a crime and being falsely detained, and from recurring bad thoughts, and more."  (*Id*. at 32.)  He asserted claims for defamation per se; false imprisonment; negligent hiring, training, supervision, and retention; and intentional infliction of emotional distress.[2] (*Id.*)

_____

[2] Plaintiff's claim for intentional infliction of emotional distress was dismissed with prejudice on July 2, 2015. (doc. 128.)

**B.**     <u>New Claims</u>

On February 3, 2016, Plaintiff moved for leave to amend his complaint to add new claims based on Defendant's conduct that he learned about from documents produced after the deadline for amending pleadings.  (*See* doc. 194.)  He was granted leave to file his second amended complaint on February 18, 2016, which specifically asserted new claims for libel per se (personal reputation), libel per se (professional reputation), and libel per quod.  (doc. 209.)

Plaintiff contends that on July 6, 2012, while "acting as an attorney on his own behalf," he took the sworn statement of Ms. Reza. (*Id*. at 33.)  While still acting "as an attorney representing himself" on August 14, 2012, he sent a letter to H. Daniel Kim, President, Director, registered agent, and majority shareholder of Defendant, requesting that Defendant "take responsibility for the wrongful conduct" of Ms. Ibanez. (*Id*. at 33-34.)  Mr. Kim did not respond. (*Id*. at 34.)

Around September 6, 2012, Defendant's comprehensive liability insurance provider, Allstate Insurance Company (Allstate), opened a claim investigation into the incident. (*Id*. at 34.)  Allstate contacted various individuals regarding the open claim and set aside $1,000 in its reserves for "liability." (*Id*. at 34-35.)  On September 10, 2012, Allstate contacted Plaintiff, who "informed [Allstate] that he [was] acting in the capacity of an attorney when talking with [the insurer]." (*Id*. at 35.)  He further informed Allstate that his "damages" were $8,000, including attorney's fees. (*Id*.)  Additionally, he refused to provide Allstate with a copy of Ms. Reza's sworn statement, which he claimed supported his version of events, unless Allstate split the $1,485 cost that he incurred obtaining the statement. (*Id*.)  Allstate declined to pay for the statement. (*Id*.)

On September 15, 2012, Plaintiff sent a second demand letter to Mr. Kim, which included a "request to settle for what [he] expressed as a very forgiving dollar amount of $50,000, when it was

determined that the value of [his] claim was greater than $100,000." (*Id.*)

On September 19, 2012, Allstate sent Plaintiff a letter requesting "(1) a copy of the deposition from Anali Reza, and (2) documentation supporting [his] damages for Defamation of Character." (*Id.*) Plaintiff did not send a copy of the deposition to Allstate.

On October 22, 2012, Mr. Kim sent the following email to Allstate, along with a copy of Plaintiff's second demand letter from September 15, 2012:

Hi, Maria

Per our voicemail exchanges, attached is the second letter from Mr. Oberc.

I will call you later today to discuss the status of this matter. I have not communicated directly with Ms. Ibana [sic] to get her side of the story (my manager Michael Chon handles all matters for Breeze laundry because I live in California), but my sense is that this is a "planned" suit by Mr. Oberc (perhaps he knows Anila [sic] Reza – I find it odd that she has presumably "testified" under oath) and in any event there are a number of weaknesses in his case. I'm sure Allstate has already done a legal analysis of the case, but I do want to point out the following:

1. When Ms. Ibana [sic] allegedly made this offending statement to Mr. Oberc, no one at the coin laundry knew who he was (his name, profession, etc.), so there was no harm to his professional reputation or him as a particular individual that can be identified. But Mr. Oberc supposedly pulled out $1,000 from his wallet and displayed his bar card, and I find this alleged act to be completely contrived to establish a basis for harm to reputation. Mr. Oberc could have remained anonimous, but by his own actions he identified himself for the purpose of making this claim.

2. It appears that Ms. Ibana [sic] genuinely made a mistake (and thus was not acting with malicious intent), and in the middle of page 3 of the first letter Mr. Oberc acknowledges that "at the moment her face turned upside down" and on the last page he references "...a more sincere apology than the one she gave ..." Ms. Ibana's [sic] acknowledgment of the mistake and apology shows that she did not act with malice, and furthermore, her acknowledgment and apology takes back any harm to Mr. Oberc's reputation. Any harm was caused by a mistake, and there was no long lasting harm because the mistake was discovered and acknowledged by all parties. Furthermore, if there is any damage awarded, it should be minimal because the short duration of the statement which ended with a retraction/apology.

3. As for the false imprisonment claim, I highly doubt that [Ms.] Ibana [sic] threatened to call the police.

I think that Mr. Oberc might have a history of filing these types of claims – both for himself and his clients. Perhaps if he actually proceeds with a lawsuit, we can try to get it dismissed and also make a counterclaim for legal expenses under the Texas law for frivolous lawsuits.

Thanks,
Daniel Kim
Tel. 650-906-0438

(*Id.* at 36-38.)

Plaintiff contends that Mr. Kim sent the email with "malice, ill-will, spite and hatred toward [him] . . . to discredit and disrepute [Plaintiff] with implications of being a dishonest person, unethical and a bad character, when such aggravated conduct was done to mislead Allstate about the applicable law on defamation and false imprisonment." (*Id.* at 39.)

On March 3, 2016, Defendant moved to dismiss Plaintiff's three new claims. (docs. 212, 213). Plaintiff filed a response on March 24, 2016 (docs. 224, 225), and Defendant filed a reply on April 7, 2016 (doc. 232).[3]  The motion is now ripe for consideration.

## II.  RULE 12(b)(6) STANDARD

Defendant moves to dismiss Plaintiff's libel per se (personal reputation), libel per se (professional reputation), and libel per quod claims pursuant to Rule 12(b)(6). (doc. 212.)

Rule 12(b)(6) allows motions to dismiss for failure to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  Motions to dismiss under Rule 12(b)(6) are disfavored and rarely granted.  *Sosa v. Coleman*, 646 F.2d 991, 993 (5th Cir. 1981).  Under the 12(b)(6) standard, a court

---

[3] Plaintiff also requested leave to file a surreply on April 21, 2016 (doc. 237).  His request for leave has separately been denied because a surreply is unwarranted.  However, even if considered, the proposed filing does not change the recommendation.

cannot look beyond the face of the pleadings. *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996); *see also Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999), *cert. denied*, 530 U.S. 1229 (2000).[4]

Pleadings must show specific, well-pleaded facts, not mere conclusory allegations to avoid dismissal. *Guidry v. Bank of LaPlace*, 954 F.2d 278, 281 (5th Cir. 1992). The court must accept those well-pleaded facts as true and view them in the light most favorable to the plaintiff. *Baker*, 75 F.3d at 196. "[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of [the alleged] facts is improbable, and 'that a recovery is very remote and unlikely.' " *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007) (citation omitted). Nevertheless, a plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555; *accord Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (emphasizing that "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions"). The alleged facts must "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. In short, a complaint fails to state a claim upon which relief may be granted when it fails to plead "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570.

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to

---

[4] "Pleadings" for purposes of a Rule 12(b)(6) motion include attachments to the complaint. *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007); *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000). Likewise, documents "attache[d] to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to [his] claim[s]." *Collins*, 224 F.3d at 499 (quotations omitted); *accord Benchmark Elecs., Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 725 (5th Cir. 2003). It is also "clearly proper in deciding a 12(b)(6) motion to take judicial notice of matters of public record." *Norris v. Hearst Trust*, 500 F.3d 454, 461 n.9 (5th Cir. 2007); *Cinel v. Connick*, 15 F.3d 1338, 1343 n.6 (5th Cir. 1994). Here, Defendant does not rely on any matters outside of the pleadings in support of their motion to dismiss.

relief.'"

*Iqbal*, 556 U.S. at 678 (citations omitted).  When plaintiffs "have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." *Twombly*, 550 U.S. at 570; *accord Iqbal*, 556 U.S. at 678 (noting that "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense").

## III. ANALYSIS

To prevail on a libel claim against a private individual under Texas law,[5] a plaintiff must prove that the defendant (1) published a statement of fact; (2) that was defamatory concerning the plaintiff; and (3) acted with negligence regarding the truth of the statement.[6] *Neely v. Wilson*, 418 S.W.3d 52, 61 (Tex. 2013); *WFAA–TV, Inc. v. McLemore*, 978 S.W.2d 568, 571 (Tex. 1998); *Tatum*, 2015 WL 9582903, at *4; *Citibank (South Dakaota), N.A. v. Tran*, No. 05-11-01423-CV, 2013 WL 3205878, at *8 (Tex. App.—Dallas June 21, 2013, pet. denied).  A statement is defamatory if it "tends to . . . injure a living person's reputation and thereby expose the person to public hatred, contempt or ridicule, or financial injury or to impeach any person's honesty, integrity, virtue, or reputation." TEX.

---

[5] "It is a long-recognized principle that federal courts sitting in diversity cases 'apply state substantive law and federal procedural law.'" *Shady Grove Orthopedic Assoc., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 417, (2010) (quoting *Hanna v. Plumer*, 380 U.S. 460, 465 (1965)).  In this diversity case, the majority of the events giving rise to the claims are alleged to have occurred in Texas, and the parties do not dispute that Texas law applies. *See De Aguilar v. Boeing Co.*, 47 F.3d 1404, 1413 (5th Cir. 1995) (quoting *Duncan v. Cessna Aircraft Co.*, 665 S.W.2d 414, 421 (Tex. 1984)) ("[T]he law of the state with the most significant relationship to the particular substantive issue will be applied to resolve that issue.").

[6] If the plaintiff is a public official or a public figure, the required culpability is elevated from negligence to actual malice, i.e., the defendant published the defamatory statement with knowledge that it was false or with reckless disregard as to whether it was true or false. *WFAA–TV, Inc. v. McLemore*, 978 S.W.2d 568, 571 (Tex. 1998).  A public figure must prove actual malice by clear and convincing evidence. *Turner v. KTRK Television, Inc.*, 38 S.W.3d 103, 119 (Tex. 2000).

CIV. PRAC. & REM. CODE ANN. § 73.001 (West 2011).

Unless the statement is defamatory per se, a plaintiff must also prove damages. *In re Lipsky*, 460 S.W.3d 579, 593 (Tex. 2015) (orig. proceeding). Defamation claims are either per se or per quod. *Id.* at 596 & n.13 (citing *Hancock v. Variyam*, 400 S.W.3d 59, 63 (Tex. 2013); *Waste Mgmt. of Tex., Inc. v. Tex. Disposal Sys. Landfill, Inc.*, 434 S.W.3d 142, 146 & nn.8-9 (Tex. 2014)). Defamation per se refers to statements that are so obviously harmful that general damages, such as mental anguish and loss of reputation, are presumed. *Hancock*, 400 S.W.3d at 63-64. Examples of defamation per se include (i) accusing someone of a crime, (ii) accusing someone of having a foul or loathsome disease, (iii) accusing someone of serious sexual misconduct, and (iv) disparaging another's fitness to conduct his or her business or trade. *In re Lipsky*, 460 S.W.3d at 596. "[W]hether a statement qualifies as defamation per se is generally a question of law." *In re Lipsky*, 460 S.W.3d at 596. "Defamation per quod is defamation that is not actionable per se." *Id.* (citing *Hancock*, 400 S.W.3d at 64).

## A.    <u>Opinion</u>

Defendant claims that Plaintiff's libel claims should be dismissed because "the statements made by Mr. Kim [were] not actionable statements of fact but, at most, subjective assertions of opinion or speculation." (doc. 213 at 8.)[7]

To be actionable defamation, a statement must be a verifiable fact rather than an opinion. *See Neely*, 418 S.W.3d at 62 ("[S]tatements that are not verifiable as false cannot form the basis of a defamation claim."); *see also Am. Heritage Capital*, 436 S.W.3d at 875; *Main v. Royall*, 348 S.W.3d 381, 389 (Tex. App.—Dallas 2011, no pet.). Nevertheless, a statement couched as an opinion may

---

[7] Although Defendant made this argument last, it is considered first because its resolution impacts later arguments. Defendant's argument that Mr. Kim's email was made in connection with contemplated judicial proceedings will be considered second.

be actionable if it expressly or implicitly asserts facts that can be objectively verified. *Avila v. Larrea*, 394 S.W.3d 646, 658 (Tex. App.—Dallas 2012, pet. denied).

Whether allegedly defamatory statements are "statements of fact or expressions of opinion depends . . . on their verifiability and the context in which they are made." *Bentley v. Bunton*, 94 S.W.3d 561, 580 (Tex. 2003) (citing *Milkovich v. Lorain Journal Co.*, 497 U.S. 1 (1990)). The analysis depends on a "reasonable person's perception of the entirety of the publication and not merely on individual statements." *Id.* at 579 (quoting *Turner v. KTRK Television, Inc.*, 38 S.W.3d 103, 115 (Tex. 2000)). For example,

> a modest, doubly qualified characterization of the plaintiff's conduct—namely, that the legality of the conduct was possibly ("may be") disputable—in the context of a disclaimer, plainly [does] not purport to represent a factual statement. *The mere mention of possible illegality in this context [does] not transform a non-actionable expression of opinion into an actionable assertion of fact. See Linan*, 2006 WL 1766204, at *5 (finding statement that "[i]t is my suspicion and belief that [the plaintiff] was involved in the attempted theft" to be an "opinion[ ] and characterization[ ]").

*Cummins v. Suntrust Capital Markets, Inc.*, 649 F. Supp. 2d 224, 251-52 (S.D.N.Y. 2009) (emphasis added) (applying Texas defamation law).

Here, Mr. Kim emailed Allstate a copy of Plaintiff's second demand letter. (*See* doc. 36.) His email cautioned, "I *have not* communicated directly with Ms. Ibana [sic] to get her side of the story." (*Id.* at 36) (emphasis added). He gave his "sense" of what occurred and posited that "*perhaps* [Plaintiff] knows Anila [sic] Reza" because it was "odd" that she would provide the testimony that he identified. (*Id.* at 36-37) (emphasis added). Mr. Kim stated, "I'm sure Allstate has already done a legal analysis of the case, but I do want to point out" several comments regarding the underlying incident with Plaintiff. (*Id.* at 37.) He commented on possible damages and the merits of the false

11

imprisonment allegation if the case goes to trial. (*Id.*)  Finally, Mr. Kim concluded his letter with the following comments:

> *I think* that [Plaintiff] *might* have a history of filing these types of claims – both for himself and his clients. *Perhaps* if he actually proceeds with a lawsuit, we can try to get it dismissed and also make a counterclaim for legal expenses under the Texas law for frivolous lawsuits.

(*Id.* at 38) (emphasis added).

Taking the alleged contents of the email provided by Plaintiff as true, as a court must for purposes of this motion, Mr. Kim did not imply the existence of undisclosed facts when he emailed Allstate.  He expressly stated the opposite in his email and contended that the comments were only his thoughts. *See, e.g., Cummins*, 649 F. Supp. 2d at 245 ("the characterization of the plaintiff's conduct did not imply the existence of undisclosed facts as the basis for the authors' opinion, as is required for an expression of opinion to be actionable for defamation.").  Mr. Kim made it abundantly clear in his email to Allstate that he had not personally spoken to anyone who was present, that he was not privy to any additional information, and that he was merely providing his "sense" of what happened and what he "think[s]" took place.  Although Mr. Kim expressed the possibility that Plaintiff "might have a history of filing these types of claims" or colluded in some form with Ms. Reza, that is not enough in this context without some indication of additional information.  *See Ridha v. Texas A & M Univ. Sys.*, No. 4:08-cv-2814, 2009 WL 1406355, at *7 (S.D. Tex. May 15, 2009); *see, e.g., Bentley*, 94 S.W.3d at 583 (considering context of the defendant's statements).[8]

In his response, Plaintiff seems to argue that a special significance should be attached to Mr.

---

[8] Notably, Plaintiff's own second amended complaint characterizes Mr. Kim's email as his "opinion" at least five times.  (doc. 209 at 39, 41, 102, 107) (e.g., "Mr. Kim was aware that when he provided *his opinion* to Allstate . . . .") (emphasis added).  It does not allege that the email is an assertion of verifiable facts.

Kim's email since it was made in the context of Allstate's insurance claim process. (*See* doc. 225 at 24-29.)  However, the circumstances of an insurance investigation are just one part of determining whether a statement makes or implies a factual assertion that is objectively verifiable. The ongoing claims process is not dispositive on its own, and neither are the individual statements taken in isolation. *See Bentley*, 94 S.W.3d at 580.  Plaintiff's demand letters, Allstate's request of Mr. Kim, Plaintiff's interactions with Allstate, and Mr. Kim's email message with its qualifications, must all be considered.  In this context, Mr. Kim did not simply couch a verifiable statement as an opinion; he actually expressed an opinion.  As a matter of law, Plaintiff has failed to allege an essential element of his defamation claims, and his libel claims should be dismissed on this basis.

## B.      Contemplated Judicial Proceedings

Defendant next moves to dismiss Plaintiff's libel claims because the statements upon which it is based were made in connection with contemplated judicial proceedings. (doc. 213 at 4-5.)

Under Texas law, "[a]ny communication, oral or written, uttered or published in the due course of a judicial proceeding is absolutely privileged and cannot constitute the basis of a civil action in damages for slander or libel." *Jenevein v. Friedman*, 114 S.W.3d 743, 745 (Tex. App.—Dallas 2003, no pet.) (quoting *Reagan v. Guardian Life Ins. Co*., 166 S.W.2d 909, 912 (Tex. 1942)).  "This privilege extends to any statement made by the judge, jurors, counsel, parties or witnesses, and attaches to all aspects of the proceedings, including statements made in open court, pre-trial hearings, depositions, affidavits and any of the pleadings or other papers in the case." *James v. Brown*, 637 S.W.2d 914, 917-18 (Tex. 1982); *accord Neely*, 416 S.W.3d at 62 & n.11.  The law allows absolute privilege or immunity for a communication because of the occasion in which it is made and not based on the content of the communication. *Reagan*, 166 S.W.2d at 913.  "The falsity of the statement or the

malice of the utterer is *immaterial*, and the rule of nonliability prevails even though the statement was not relevant, pertinent and material to the issues involved in the case." *Id.* at 912 (emphasis added). The rule is one of public policy "founded on the theory that the good it accomplishes in protecting the rights of the general public outweighs any wrong or injury which may result to a particular individual." *Id.*

Texas courts have held that this absolute privilege also extends to a communication "preliminary to a proposed judicial proceeding . . . if it has some relation to the proceeding." *James*, 637 S.W.2d at 917 (quoting RESTATEMENT (SECOND) OF TORTS § 588 (1981)); *accord Bell v. Lee*, 49 S.W.3d 8, 10 (Tex. App.—San Antonio 2001, no pet.). Whether an alleged libelous communication is related to a proposed or existing judicial proceeding is a question of law. *Daystar Residential, Inc. v. Collmer*, 176 S.W.3d 24, 28 (Tex. App.—Houston [1st Dist.] 2004, pet. denied.); *Thomas v. Bracey*, 940 S.W.2d 340, 343 (Tex. App.—San Antonio 1997, no writ). When deciding the issue, "[a] court must consider the entire communication in its context, and must extend the privilege to *any statement that bears some relation* to an existing or proposed judicial proceeding." *Russell v. Clark*, 620 S.W.2d 865, 870 (Tex. Civ. App.—Dallas 1981, writ ref'd n.r.e.) (emphasis added). Additionally, all doubt is resolved in favor of the relevancy of the statement. *Id.*

Here, the allegedly libelous statements were made in an email between Mr. Kim—a licensed Texas attorney as well as President, Director, and registered agent of Defendant—and Defendant's insurer.[9]   Moreover, Plaintiff identified himself as an "attorney representing himself" in his

---

[9] Notably, Allstate objected on grounds of privilege and moved to quash and for a protective order from Plaintiff's subpoena for the entire claim and litigation file, which included Mr. Kim's email. (doc. 45.) It failed to timely provide any evidence of the elements of the claim in support of its motion, however, resulting in a finding that it had not met its burden to establish privilege and an order to disclose the file. (*See* docs. 49; 50 at 34-35.)

correspondence with Mr. Kim and his discussions with Allstate. (*Id*. at 33-45.)  Considering the entire communication in its context, Mr. Kim's statements bear some relation to a proposed judicial proceeding; namely, the lawsuit Plaintiff was planning to file unless Defendant or its insurer compensated him.  Accordingly, the statements were made in anticipation of pending litigation, and the statements are subject to an absolute privilege as a matter of law.

Although Plaintiff argues that at the time of Mr. Kim's email, "there was nothing but a *bare possibility* that a potential judicial proceeding might occur, as in millions of instances in this nation every week," this characterization is inconsistent with the overall circumstances of his communications with Mr. Kim. (*See* docs. 209 at 33-54; 225 at 10) (emphasis added).  Accepting the allegations in his complaint as true as a court must for the purposes of this motion,  Plaintiff identified himself as an "attorney representing himself," noted "the value of [his] claim," assembled evidence in support of his claims, requested both damages and incurred attorney's fees, and increased his settlement request when his claims were not compensated quickly. (*Id*. at 33-35.)  Moreover, in the insurance context, "first-party claims are those involving damages suffered by [an] insured whereas third-party claims are those involving claims made by third parties *against* [an] insured." *State Farm Lloyds, Inc. v. Williams*, 960 S.W.2d 781, 789 (Tex. App.—Dallas 1997, pet. dism'd by agr.) (citation omitted and emphasis in original).  Because Plaintiff was making claims against an insured, he made a third party claim.  A number of federal courts have noted, "files generated during the investigation of third party claims are made in *anticipation of litigation*." *Weitzman v. Blasing Pedals, Inc*., 151 F.R.D. 125, 126 (D. Colo. 1993) (citing cases) (emphasis added).  Accordingly, Mr. Kim, Defendant, and Allstate could all reasonably conclude that judicial proceedings were contemplated by Plaintiff by virtue of his asserted third party insurance claim.

15

Plaintiff next argues that this privilege does not apply because "the court can reasonably infer from the Complaint that Mr. Kim was not acting in the capacity of an attorney Defendant." (doc. 225 at 11.)  However, the privilege is not limited solely to pre-litigation communications of attorneys. *See James*, 637 S.W.2d at 917-18 (noting that the privilege extends to statements of the judge, jurors, counsel, parties, or witnesses).   Moreover, courts have previously extended similar privileges to corporations, in addition to individual parties. *See, e.g., S.E.C. v. Brady*, 238 F.R.D. 429, 439 (N.D. Tex. 2006) (citing *Upjohn Co. v. United States*, 449 U.S. 383, 390 (1981)) (considering the attorney-client privilege).  Here, Plaintiff has asserted that Mr. Kim was operating in his capacity as President, Director, and registered agent of Defendant, if not also as an attorney, when he communicated with Allstate. (doc. 209 at 33-34.)  Accordingly, his status as Defendant's attorney is immaterial. *See id.* Even if Mr. Kim communicated with Allstate in his professional non-legal capacity, the privilege is still applicable for Defendant as a party to the contemplated judicial proceedings.[10]

Plaintiff has failed to state a libel claim upon which relief can be granted and his three libel claims should be dismissed.[11]

## IV. RECOMMENDATION

Defendant's Rule 12(b)(6) motion should be **GRANTED**, and Plaintiff's claims for libel per se (personal reputation), libel per se (professional reputation), and libel per quod should be **DISMISSED** with prejudice for failure to state a claim.

---

[10] Arguments made by Plaintiff in his response related to Mr. Kim's retraction of his email are not considered because it was not included in the complaint, and under the 12(b)(6) standard, a court cannot look beyond the face of the pleadings. *Baker*, 75 F.3d at 196.

[11] Because Plaintiff's libel claims are subject to dismissal on two of Defendant's four arguments, the remaining two argument are not considered.

**SO RECOMMENDED on this 2nd day of May, 2016.**

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law.  Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found.  An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific.  Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error.  *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

17